## A10A2275. SERNA v. THE STATE.
(707 SE2d 904)

DOYLE, Judge.

Following a jury trial, Juan Antonio Serna appeals from his conviction of sexual battery,[1] possession of dangerous drugs,[2] and furnishing alcohol to a person under 21 years of age.[3] Serna challenges the dangerous drug count only, contending that (1) the evidence was insufficient to prove that he committed the crime as alleged in the indictment, (2) the trial court erred by instructing the jury on fatal variance, and (3) the evidence did not suffice to show

---

[1] OCGA § 16-6-22.1 (b).

[2] OCGA § 16-13-72.

[3] OCGA § 3-3-23.1 (a).

intent. For the following reasons, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[5]

So viewed, the evidence showed that a group of college students and friends gathered in an apartment for a birthday celebration. The group drank alcoholic drinks and socialized over the course of the evening, and Serna, a professor at the college who knew several of the students, also attended. At one point, Serna offered to provide the students with a high quality tequila, and he left to retrieve the tequila. By the time he returned to the apartment, most of the attendees had left, but K. M., one of Serna's former students and teaching assistants, remained in the apartment. Serna and K. M. drank a shot of tequila together, and Serna offered K. M. a small bottle containing a substance he asked K. M. to sniff, which rendered K. M. "very dizzy . . . very heavy and just kind of stuck where [he] was." Serna then proceeded to sexually touch K. M. without K. M.'s consent. Serna soon left the apartment, and K. M. called campus security after he recovered from the effect of the sedative administered by Serna.

Serna was arrested, and police found in his residence a bottle labeled "Amsterdam Poppers" matching K. M.'s description of the bottle containing the sedative. Serna was charged with several crimes based on the assault, and a jury found him guilty of sexual battery, possession of dangerous drugs, and furnishing alcohol to a minor. After Serna's motion for new trial was denied, he filed this appeal.

1. Serna contends that the evidence was insufficient to show that he committed the dangerous drug violation as alleged in the indictment. Serna does not challenge the sufficiency of the evidence as to the finding that he unlawfully possessed a dangerous drug; instead,

---

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] (Punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 556-557 (1) (507 SE2d 484) (1998).

he argues that the offense was not proven as alleged. Thus, Serna essentially contends that there was a fatal variance between the proof and the indictment.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but *whether there has been such a variance as to affect the substantial rights of the accused*. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.[6]

Here, the indictment accused Serna of possessing "a dangerous drug, to wit: Amyl Nitrate, in violation of Dangerous Drug Act, Code Section 16-13-70 [et seq.], in that said accused possessed a bottle of liquid labeled 'Amsterdam Poppers[,'] also known as Amyl Nitrate, contrary to the laws of this state. . . ." Serna correctly points out that *amyl nitrate* is not included in the list of dangerous drugs,[7] although he concedes that the trial evidence showed that the bottle he possessed contained *alkyl nitrite*, which is classified as a dangerous drug.[8]

These facts are materially the same as those in *Hardin v. State*,[9] in which this Court affirmed the conviction of a defendant who was indicted for possessing a certain compound alleged to be a controlled substance, but which was actually a nonexistent compound with a

---

[6] (Punctuation omitted; emphasis supplied.) *Cooper v. State*, 286 Ga. 66, 68 (2) (685 SE2d 285) (2009).

[7] We note that Serna did not file a general demurrer to the indictment in the trial court; therefore, in this direct appeal from the denial of a motion for new trial, we do not consider the argument that the indictment failed to allege the commission of any crime.

> When an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law and, upon the trial, no demurrer to the indictment is interposed and the accused is convicted under the indictment and judgment is entered on the verdict, the accused's proper remedy is a motion in arrest of judgment or habeas corpus. A motion for [directed verdict or] new trial is not the proper method to attack the sufficiency of an indictment and does not provide a basis for this Court to review the indictment.

(Citations and punctuation omitted.) *McKay*, 234 Ga. App. at 559 (2).

[8] See OCGA § 16-13-71 (b) (21.1).

[9] 142 Ga. App. 795 (237 SE2d 202) (1977).

name similar to an actual controlled substance.[10] This Court concluded that the difference was due to an "obvious typographical error in the indictment" and found the variance to be harmless.[11] We find this reasoning persuasive here in light of the similarity in name between the indicted chemical and the proven chemical. Further, the indictment notified Serna of the date of the offense, the type of offense, and the basis for the offense; and Serna was convicted of the same offense listed in the indictment.[12] Based on these circumstances, Serna's defense was not compromised at trial, and he was protected from a second prosecution for the same offense. Therefore, the variance between the allegations in the indictment and proof at trial was not fatal.[13]

2. Serna also contends that the trial court erred by leaving for the jury the question of whether any variance between the indictment and proof at trial was fatal. To the extent the trial court relied on the jury to determine whether the variance was fatal, we agree, but we find the error to be harmless in light of our holding in Division 1.

3. Finally, Serna contends that the evidence was insufficient to show his intent to possess a dangerous drug because he was unaware that the chemical compound in the "Amsterdam Poppers" bottle was classified as a dangerous drug under OCGA § 16-13-71. We disagree.

OCGA § 16-13-72 provides that "it shall be unlawful for any person . . . to . . . possess in this state any dangerous drug," except under certain medical and pharmacological circumstances not present in this case. The term "dangerous drug" is defined to include alkyl nitrite, which was the compound Serna possessed.[14] Serna argues that because he was unaware of the precise chemical compound in the bottle and of its "dangerous drug" status in the Criminal Code, he lacked the requisite criminal intent to be guilty of possessing the dangerous drug.

Nevertheless, "[i]gnorance of the law excuses no one."[15] "The fact that the defendant was ignorant of the fact that [ ]he was violating the law does not relieve h[im] of criminal intent if [ ]he intended to do the act which the legislature has prohibited."[16] Serna

---

[10] See id. at 796 (2).

[11] Id.

[12] Compare *Smith v. State*, 202 Ga. App. 664, 665 (415 SE2d 481) (1992) (reversing conviction of *offense* not charged in indictment).

[13] See *Hardin*, 142 Ga. App. at 796 (2). See also *Murray v. State*, 157 Ga. App. 596, 598-599 (4) (278 SE2d 2) (1981) (finding no fatal variance despite a discrepancy in the name of the chemical compound).

[14] See OCGA § 16-13-71 (b) (21.1).

[15] OCGA § 1-3-6.

[16] *Wilson v. State*, 57 Ga. App. 839, 841 (197 SE 48) (1938). See *Mincey v. State*, 303 Ga.

does not contend that he did not possess the chemical or that his possession was accidental. Furthermore, with respect to Serna's knowledge of the nature of the chemical,

> both knowledge and possession may be proved, like any other fact, by circumstantial evidence. And it has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband. Thus, OCGA § 16-2-6 provides that a jury may find criminal intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.[17]

At trial, there was evidence supporting an inference that Serna used the dangerous drug to sedate his sexual battery victim. This conduct demonstrated Serna's knowledge of the harmful effect of the compound and authorized the jury to conclude that Serna intended to possess a dangerous drug, even if he was subjectively unaware of the precise chemical compound in the bottle and its regulated nature. Thus, based on the facts of this case and the longstanding principles quoted above, we conclude that Serna's argument fails.[18]

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 17, 2011.

*Robert S. Lanier, Jr.*, for appellant.
*Richard A. Mallard, District Attorney, Daphne H. Jarriel, Assistant District Attorney*, for appellee.

---

App. 257, 257-258 (692 SE2d 809) (2010).
[17] (Citations and punctuation omitted.) *Riley v. State*, 292 Ga. App. 202, 205 (2) (663 SE2d 835) (2008).
[18] Cf. *In the Interest of T. S.*, 211 Ga. App. 46, 47 (2) (438 SE2d 159) (1993) (affirming finding of delinquency for inhaling fumes of substance defined as "model glue," when juvenile inhaled *spray paint* fumes containing acetone). See also *Duvall v. State*, 305 Ga. App. 545, 546 (1) (699 SE2d 761) (2010), cert. granted, *Duvall v. State* (Case No. S10G2079, Feb. 7, 2011).